## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

CHRISTINA RAWLS-DOLIN,

       **Plaintiff,**

v.                                                                          **Civil Action No. 3:19cv740**

RIVERSIDE REGIONAL JAIL, *et al.,*

       **Defendants.**

### <u>MEMORANDUM OPINION</u>

This matter comes before the Court on eight motions[1]:

(1)     Plaintiff Christina Rawls-Dolin's Motion for Leave to File Electronically (the "Motion to File Electronically"), (ECF No. 3);

(2)     Defendant Jordan Kindred's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)[2] (the "First Kindred Motion to Dismiss"), (ECF No. 10);

(3)     Kindred's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Second Kindred Motion to Dismiss"), (ECF No. 19);

(4)     Defendants Riverside Regional Jail ("Riverside"), Sergeant Devin Holland, Lieutenant William Bain, Sergeant Brandon Edmonds, Sergeant Angela Moore, Sergeant Nicholas Sample, Sergeant Shanta Brown, Retired Major Dawn Flippin, and Lieutenant Charlene Jones (collectively, the "Riverside Defendants") Motion to Dismiss (the "Riverside Motion to Dismiss), (ECF No. 25);

(5)     Rawls-Dolin's Motion for Subpoena for Address (the "Motion for Subpoena"), (ECF No. 29);

(6)     Defendant Erica Gordon's Motion to Dismiss Plaintiff's Amended Complaint (the "Gordon Motion to Dismiss"), (ECF No. 41);

---

[1] Defendants filed, along with the Motions to Dismiss, notices consistent with the requirements set forth in *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), and Local Civil Rule 7(K). (ECF Nos. 11, 20, 27, 43.)

[2] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

(7)     Rawls-Dolin's Motion for Scheduling Order (the "Motion for Scheduling Order"), (ECF No. 45); and,

(8)     Rawls-Dolin's Motion for Default Judgment Against Defendant Bill Wilson, (the "Motion for Default Judgment"), (ECF No. 46).

No Defendant has responded to Rawls-Dolin's pending motions and the time to do so has expired.  Rawls-Dolin, proceeding *pro se* in this action, timely responded to the First Kindred Motion to Dismiss.  (ECF No. 17.)  Rawls-Dolin also timely responded to the Second Kindred Motion to Dismiss, (ECF No. 31), and Kindred replied, (ECF No. 30).  Rawls-Dolin timely responded to the Riverside Defendants Motion to Dismiss, (ECF No. 33), and the Riverside Defendants replied, (ECF No. 36).  Rawls-Dolin also filed a Supplemental Response to the Second Kindred Motion to Dismiss and the Riverside Defendants Motion to Dismiss, (ECF No. 39), and Kindred and the Riverside Defendants replied to Rawls-Dolin's Supplemental Response, (ECF Nos. 40, 44).[3]  Rawls-Dolin did not respond to the Gordon Motion to Dismiss and the time to do so has expired.  These matters are ripe for disposition.

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process.[4]  The

---

[3] The Riverside Defendants and Kindred do not challenge the Court's ability to consider Rawls-Dolin's supplemental response.  (*See* ECF Nos. 40, 44.)  The Court has reviewed Rawls-Dolin's Supplemental Response, to which she attaches an extensive "Exhibit A" that she identifies as a "document[] sent to the Equal Opportunity Employment Commission [sic] . . . prior to [Rawls-Dolin] obtaining the right to sue" Riverside.  (Suppl. Resp. 1, ECF No. 39 (footnote omitted).)

Rawls-Dolin allegedly submitted the exhibit to the Equal Employment Opportunity Commission ("EEOC") following the filing of a complaint.  (*See id.*)  However, the exhibit addresses only allegations as to "Wellpath/CCS and Corizon."  (*See* Suppl. Resp. Ex. A 1, ECF No. 39-1.)  Although the exhibit is lengthy, because it does not address Rawls-Dolin's allegations as to Riverside or to any of the other individuals named in her Amended Complaint, the exhibit does not affect the Court's analysis when considering the pending motions.

[4] The Riverside Defendants filed a "Waiver of Oral Argument" (the "Waiver") stating that they "waive oral argument on" the Riverside Motion to Dismiss.  (Waiver 1, ECF No. 28.)

Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[5]  For the reasons that follow, the Court

will grant the Second Kindred Motion to Dismiss and the Gordon Motion to Dismiss.  The Court

will grant in part and deny in part the Riverside Defendants Motion to Dismiss.  The Court will

deny the Motion to File Electronically, the First Kindred Motion to Dismiss,[6] the Motion for

Subpoena, the Motion for Scheduling Order, and the Motion for Default Judgment.

## I.  Factual and Procedural Background

Rawls-Dolin, proceeding *pro se* and *in forma pauperis*, seemingly brings this Title VII

and related-claims action against twelve defendants.[7]  Her claims stem from two related events:

---

In response, Rawls-Dolin filed an "Objection" (the "Objection") stating that she "does not waive her right to oral argument and requests that oral arguments be made before the Honorable M. Hannah Lauck." (Obj. 1, ECF No. 34.)  The Riverside Defendants opposed Rawls-Dolin's Objection. (ECF No. 35.)

Because the materials before the Court adequately present the facts and legal contentions, the Court need not hold a hearing to decide the instant motions. *See* Fed. R. Civ. P. 78 (stating that "[b]y rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings"); E.D. Va. Loc. Civ. R. 7(J) (stating that "[i]n accordance with Fed[eral] R[ule of] Civ[il] P[rocedure] 78 the Court may rule upon motions without an oral hearing").  For this reason, the Court will deny Rawls-Dolin's request for oral argument in the Objection.

[5] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Rawls-Dolin identifies her "[b]asis for jurisdiction" as 42 U.S.C. § 2000e ("Title VII"), 18 U.S.C. §§ 245, 242; and the First Amendment of the United States Constitution. (Am. Compl. 3, ECF No. 9.)

[6] Kindred filed the First Kindred Motion to Dismiss after Rawls-Dolin filed her Amended Complaint, as ordered by the Court, but before the Court granted Rawls-Dolin's motion to proceed *in forma pauperis*.  After the Court granted Rawls-Dolin's motion to proceed *in forma pauperis*, Kindred filed the Second Kindred Motion to Dismiss, which is the same as the First Kindred Motion to Dismiss. (*Compare* First Kindred Mot. Dismiss, ECF No. 10, *with* Second Kindred Mot. Dismiss, ECF No. 19.)  Therefore, the Court will deny as moot the First Kindred Motion to Dismiss.

[7] Despite Rawls-Dolin's attempt to consolidate her claims against Defendants per the Court's October 23, 2019 Order, (ECF No. 8), the Amended Complaint fails to present numerated counts or a clear indication of which Defendant each claim runs against. (*See* Am. Compl.)  Additionally, rather than providing clarity, the legal citations spattered within the Amended Complaint muddy Rawls-Dolin's allegations. (*See id.*)  The Court must liberally construe *pro se* pleadings, but the Court need not construct claims for Rawls-Dolin. *See Laber v.*

(1) the alleged sexual harassment perpetrated by Kindred, a Riverside employee, that she faced while working at Riverside; and, (2) Riverside's revocation of her security clearance, which resulted in Rawls-Dolin losing a necessary qualification to work at Riverside.

## A.   **Factual Background**[8]

Rawls-Dolin acknowledges, as she must, that she was not a Riverside employee, but states that she "was employed at . . . Riverside . . . starting in late October 2017 through Corizon and later Wellpath as a Mental Health Professional." (Am. Compl. 4, 7, ECF No. 9.) For example, Rawls-Dolin avers that she "was improperly subjected to treatment as a Riverside employee (which [she] was not)." (*Id.* 7.) Rather, she identifies "Corizon and later Wellpath" as her employer, (*id.* 2), and states that Riverside "treated [her] as a common law employee," (*id.* 7). She states that although she "was never terminated from [her] employment with Wellpath," on April 15, 2019, her "security clearance was revoked and [she was] forcefully removed from the [Riverside] site." (*Id.* 7–8.)

---

*Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). Furthermore, liberal construction does not excuse a clear failure to allege a federally cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

[8] For the purpose of the Rule 12(b)(6) Motion to Dismiss, the Court will accept the well-pleaded factual allegations in Rawls-Dolin's Amended Complaint as true, and draw all reasonable inferences in favor of Rawls-Dolin. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'") (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

Under 12(b)(1), when a defendant asserts that the complaint fails to state a claim upon which subject matter jurisdiction can lie, the Court assumes the truth of the facts alleged by plaintiff. *See Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624, AFL-CIO v. Virginia Int'l Terminal*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Riverside challenges whether Rawls-Dolin has raised a Title VII claim upon which subject matter jurisdiction can lie. Therefore, the Court will assume the truth of the facts alleged by Rawls-Dolin when deciding the Title VII claim against Riverside in the Amended Complaint.

In her convoluted Amended Complaint, Rawls-Dolin makes allegations against all twelve defendants, but her allegations arise from the sexual harassment perpetrated by Kindred throughout her employment at Riverside. The Court will first introduce the allegations against Kindred. Then, the Court will recount the related allegations against the remaining defendants.

### 1.    Allegations Against Kindred

Rawls-Dolin alleges that Kindred worked as a Riverside Correctional Officer during her time at Riverside. (*Id.* 1.) She states that Kindred's inappropriate actions began "at the start of [her] employment" and continued "throughout [her sixteen] months of employment." (*Id.* 4, 10.) She describes Kindred's conduct as "malicious, stalking continuous leering, pervasive flirting and threatening." (*Id.* 4.) She describes how Kindred would "would watch who [she] was talking to, interfer[e] during assessments with inmates to compliment [her], constant[ly] love bomb[], talk[] about [her] body parts, continuous[ly] professing his feelings towards [her] and com[e] to [her] office and circl[e] around [her]." (*Id.* 11.) Rawls-Dolin maintains that "Kindred was always the aggressor."[9] (*Id.* 12.) She asserts that other employees observed some of Kindred's behavior and that several Riverside employees knew of Kindred's propensity for this type of behavior. (*See id.* 4, 12.)

On September 5, 2018, approximately one year after she began working at Riverside, Rawls-Dolin reported Kindred's behavior to "Captain Rochelle informally through

---

[9] Rawls-Dolin alleges that Kindred "groom[ed] [her] with sexual coercion for months." (Am. Compl. 12.) On August 25, 2018, Rawls-Dolin admits that she and Kindred had a sexual encounter which she "felt [was] the only way Kindred would leave [her] alone," but it led to further harassment. (*Id.* 4–5.) Rawls-Dolin avers that she "concealed [her] shame, humiliation and the abuse that occurred [eight] months prior." (*Id.* 13.) Rawls-Dolin alleges she confronted Kindred which again reaped no improvement in behavior. (*Id.*)

communication." (*Id.* 9.)  She states that "Captain Rochelle talked to Kindred about his behavior and to leave [Rawls-Dolin] alone." (*Id.*)

On March 28, 2019, approximately two weeks before Riverside terminated her security clearance, Rawls-Dolin again reported Kindred's behavior. (*Id.* 9.)  In this instance Rawls-Dolin "wrote an official grievance, which very briefly discussed pervasive sexual harassment, stalking and [Kindred's] obsession during [her] entire [sixteen] months of employment at [Riverside]." (*Id.*)  This second complaint, she alleges, resulted in retaliation against her that eventually led to the revocation of her security clearance. (*See id.*)

### 2.  <u>Allegations Against Other Defendants</u>

Despite a duty to construe *pro se* pleadings liberally, the Court struggles to identify Rawls-Dolin's counts and which claims run against which Defendant.  As to the other defendants, it appears that Rawls-Dolin asserts that some engaged in retaliation following her complaints about Kindred. (*Id.* 2, 7.)  As for others, she asserts that they committed sexual harassment or threatened her with physical violence. (*Id.* 3, 5–6.)  For each of the remaining defendants, it appears that Rawls-Dolin generally alleges that they participated in the Title VII discrimination that she faced while working at Riverside. (*Id.* 2, 4, 6.)

### a.  <u>Retaliation Allegations</u>

Rawls-Dolin states that Charlene Jones, "Lieutenant, Office of Professional Review, Riverside," revoked Rawls-Dolin's security clearance "in retaliation for exercising [her First] Amendment right to Freedom of Speech (Protected Speech clause) regarding the sexual harassment complaint [that Rawls-Dolin] had filed on March 28." (*Id.* 7.)  Further, Rawls-Dolin avers that "Jones [and] Riverside . . . both conspired to intimidate [her] for free exercise of [her] First Amendment protected speech rights in speaking about the prevalent sexual harassment that

[she] was the unwanted recipient while working in . . . [Riverside's] facility." (*Id.* 8.) Rawls-Dolin alleges "Jones . . . made excuses for [Kindred]" when Rawls-Dolin filed her complaint. (*Id.* 14.) Rawls-Dolin explains that "Jones asserted [that Rawls-Dolin] violated a non-disclosure form" as the reason that Jones revoked Rawls-Dolin's security clearance, but Rawls-Dolin maintains that "Jones had [her] sign the incorrect forms on March 28." (*Id.* 7.) She also alleges that the form "was not even applicable since [she] was not a [Riverside] employee." (*Id.* 8.)

As to Shanta Brown, "Sergeant, Office of Professional Review, Riverside," Rawls-Dolin states that after Riverside terminated her security clearance, Brown and two other women "escorted" her "out of the facility and all the way to [her] vehicle . . . in excess of Riverside's" Standard Operating Procedures. (*Id.* 2, 7.) She states that Brown and another woman "would not allow [her] to obtain [her] personal belonging[s] from [her] office due to intimidation." (*Id.* 14.) Rawls-Dolin maintains that she "was in fear of violence by the three as they had formed a mob to silence [her] for utilizing [her] First Amendment right to Protected Speech for speaking out about their wrongdoings." (*Id.* 7.)

Rawls-Dolin also maintains that after she reported Kindred's behavior, Brown told her "[w]e need him (Defendant Kindred). We cannot get rid of him. We are short staffed." (*Id.* 10.) She further states that Brown "made it seem like [Rawls-Dolin] should be happy that [she was] getting unwanted attention" and "minimized what [she] endured." (*Id.* 13.) Rawls-Dolin believes that these statements show that Riverside "intentionally accommodated [her] aggressor, Kindred" and that "no investigation was conducted." (*Id.* 10.) Accordingly, Rawls-Dolin alleges that "[Kindred] knew there would not be any ramifications." (*Id.* 14.)

As to Dawn Flippin, "Sergeant, Office of Professional Review, Riverside," Rawls-Dolin states that after she submitted complaints on two other individuals, Flippin "retaliated against

[her] . . . by removing [Rawls-Dolin] from [her] workspace with [her] colleagues, other mental health professionals and an entire area inside" Riverside.[10]  (*Id.* 6–7.)  Rawls-Dolin maintains that "[t]his action was entirely based off [her] race (African American) contrasted with the race of Kindred (white)."  (*Id.* 7.)  She asserts that she "complained about the retaliation around April 12, 2019."  (*Id.*)  Later, Rawls-Dolin states that Flippin "initiated a gate stop which prevented [her] from accessing the entire [Riverside] facility."  (*Id.*)

As her final retaliation allegation, Rawls-Dolin asserts that Erica Gordon, "Director of Nursing, Wellpath," participated with Jones and another woman to "escort[]" her "out of the facility and all the way to [her] vehicle . . . in excess of Riverside's" Standard Operating Procedures.  (*Id.* 2, 7.)  Rawls-Dolin maintains that Gordon's presence was "to intimidate, bully, harass and stalk [her]."  (*Id.* 7.)

In her Amended Complaint, Rawls-Dolin posits that despite her efforts, "[Riverside] does not ever conduct investigations, [sic] they just allow staff to fight amongst themselves."  (*Id.* 6.)  Rawls-Dolin speculates that this results in Riverside being "chronically short-staffed."  (*Id.*)  Rawls-Dolin alleges that Riverside has a "Zero Tolerance" policy, yet "abusive . . . behaviors [go] unregulated" due to Riverside's "complacen[cy]."  (*Id.* 15.)  During her employment at Riverside, Rawls-Dolin avers she made formal complaints to Riverside's Office of Professional Review ("OPR") on three different occasions from late 2018 to early 2019.  (*Id.* 5, 6, 7.)  Further, Rawls-Dolin alleges she "utilized [Riverside's] [Standard Operating Procedure] and [Riverside's] chain of command in asking to meet with the Superintendent . . . regarding [Rawls-

---

[10] Later in the Amended Complaint, Rawls-Dolin states that Flippin took this action on the "same day" that she submitted her second complaint about Kindred.  (Am. Compl. 9.)  She specifies that Flippin told her "to leave [her] shared office space for mental health workers" and banned Rawls-Dolin "from the entire Housing Unit 2, which was where [Rawls-Dolin's] shared office space was located."  (*Id.*)

Dolin's] investigation." (*Id.* 7.) Rawls-Dolin alleges that Riverside's failure to "address[] the matter . . . would deter any other woman from [approaching] OPR to talk about abuse within [Riverside]." (*Id.* 13.)

### b.   Sexual Harassment and Threats of Physical Violence Allegations

In addition to her retaliation allegations, Rawls-Dolin alleges that two defendants subjected her to further sexual harassment and threats of physical violence.

First, Rawls-Dolin states that Nicholas Samples Jr., "Correctional Sergeant, Riverside," subjected her to sexual harassment. (*Id.* 3, 5.) She states that "[i]n [W]inter 2019," she "went to Samples work site in Housing Unit 5 to conduct a sick call assessment with an inmate." (*Id.* 5.) She states that Samples "commented on [her] facial expressions and eyebrows as if they meant something and that [she] look[ed] mean" and also "querie[d her] on why [she doesn't] post on Facebook." (*Id.*) The two then discussed "family and childbirth" during which Rawls-Dolin "opened up to Samples about a bad birth experience." (*Id.*) Samples then told Rawls-Dolin that he has "sexual harassment charges on [him] but [he] ha[d] looked at [her] body before and [she] ha[d] narrow hips." (*Id.*) For these reasons, he did "not think [she] should have any more children." (*Id.*) Rawls-Dolin maintains that "Samples statements were clearly sexual harassment in nature and created a hostile working environment for [her]." (*Id.*) On March 27, 2019, the day before she complained about Kindred for the second time, Rawls-Dolin complained about Samples's behavior. (*Id.* 5.)

Second, Rawls-Dolin states that she was subjected to "threats of physical violence" by Sergeant Moore, "Correctional Sergeant, Riverside." (*Id.* 3, 5.) "[I]n early 2019," Rawls-Dolin states that as she returned from lunch with another individual, she began "joking with Moore," by "stating how good lunch was" and rubbing her stomach. (*Id.* 5.) She alleges that Moore

"replied, 'You know I would fight you right[?]'" (*Id.*) Rawls-Dolin states that she replied, "If you would ever put your hands on me, I would definitely hit you back." (*Id.* 5–6.) "Moore then proceeded to tell [her] that [she] was aggressive" and "threaten[ed]" that he would speak with Rawls-Dolin's supervisor. (*Id.* 6.) Rawls-Dolin maintains that this constituted "Moore's second time gesturing and talking to [her] about violence." (*Id.*) Rawls-Dolin also complained about Moore's behavior in her March 27, 2019 complaint. (*Id.* 5.)

### c.    Title VII Discrimination Allegations

Finally, in addition to her retaliation, sexual harassment, and threat of physical violence allegations, Rawls-Dolin describes the discrimination that she faced, allegedly in violation of Title VII.

For instance, Rawls-Dolin states that she "spoke to" Devin Holland, "Correctional Sergeant, Riverside" and "Kindred's new supervisor," "in late October 2018 or early November 2018 regarding Kindred." (*Id.* 2, 4.) Rawls-Dolin states that Holland and Kindred are friends and that in response to her complaint, Holland stated that "[h]e's (Kindred) an a\*\*hole and will never change." (*Id.* 4.)

Rawls-Dolin also points to a September 2, 2018 incident in which she overheard Holland, Kindred, and William Bain, "Correctional Lieutenant, Riverside," "talking about [her] in an inappropriate conversation." (*Id.*) Rawls-Dolin suggests that this conversation contributed to "an extreme hostile workplace." (*Id.* 6.)

As to Bill Wilson, "Correctional Major, Riverside," Rawls-Dolin states that "[i]n early April 2019," Wilson "came down into [her] work area and stared at [her]." (*Id.* 6.) Rawls-Dolin states that "Wilson is a member of the [Riverside] Command Staff and is also Holland's father-in-law." (*Id.*) Rawls-Dolin asserts that "Wilson conspired to have [her] security clearance

10

revoked due to the personal relationships between him and Holland [and] Holland and Kindred." (*Id.*)

Rawls-Dolin identifies Brandon Edmonds, "Officer, Federal Correctional Institute Petersburg," as the "investigator" on her complaints and states that he "did not do a thorough, proper investigation." (*Id.* 3, 6.) She states that Edmonds did not ask her "any follow up questions, [did] not give[] [her] an update on the investigation and d[id] not even know the results of it." (*Id.* 6.)

### B.   **Procedural Background**

Rawls-Dolin originally filed five cases in this Court against various defendants, all arising from the actions specified in the Amended Complaint. (*See* Oct. 23, 2019 Order 1, ECF No. 8.) Although the Court concluded that Rawls-Dolin "sufficiently states a claim in each of her five Complaints to survive the *in forma pauperis* gatekeeping statute," the Court ordered her to file a single Amended Complaint against all defendants to avoid "piecemeal litigation." (*Id.* 2.)

Rawls-Dolin timely filed the Amended Complaint, identifying three statutes and one constitutional amendment as the "Basis for Jurisdiction." (Am. Compl. 3, ECF No. 9.) First, she identifies Title VII and states that she brings claims based on "race, color, gender, religion, [and] national origin."[11] (*Id.*) Second, she identifies 18 U.S.C. § 245(b)(2)(C)[12] and 18 U.S.C. § 242

---

[11] The Court notes that although Rawls-Dolin identifies "race, color, gender, religion, [and] national origin" throughout her Amended Complaint, she makes factual allegations that pertain to only race and gender. (*See generally* Am. Compl.) Therefore, to the extent that Rawls-Dolin raises claims pertaining to color, religion, and national origin, the Court dismisses those claims.

[12] Title 18, Section 245(b)(2)(C) states, in pertinent part:

Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or

as statutes that afford her relief.[13]  Finally, she identifies the "United States Constitution First

Amendment [R]ight to Freedom of Speech (Protected Speech Clause)."[14]  (*Id.*)  Although she

does mention certain defendants when discussing the various bases for jurisdiction, Rawls-Dolin

does not clearly specify which statutes or constitutional amendments undergird her claims

against each of the individual defendants.  Rawls-Dolin seeks a considerable amount of damages

against the named defendants, including:

(1)   actual damages against Riverside and Kindred of $1,122,000;
(2)   actual damages against Jones, Brown, Flippin, Gordon, and Samples of $56,100 each;
(3)   actual damages against Holland, Bain, Wilson, and Edmond of $100,000 each;

---

interfere with . . . any person because of his race, color, religion or national origin and because he is or has been . . . applying for or enjoying employment, or any perquisite thereof, by any private employer or any agency of any State or subdivision thereof, or joining or using the services or advantages of any labor organization, hiring hall, or employment agency . . . shall be fined under this title, or imprisoned not more than one year, or both.

18 U.S.C. § 245(b)(2)(C).

[13] Title 18, Section 242 states, in pertinent part:

Whoever, under color of any law . . . willfully subjects any person in any State, Territory, Commonwealth, . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 242.

[14] The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. CONST. amend. I.
Rawls-Dolin does not identify 42 U.S.C. § 1983 as the statutory vehicle through which her First Amendment claim must proceed. (*See* Mem. Supp. Riverside Mot. Dismiss 13.) Nonetheless, because Rawls-Dolin identifies a First Amendment Retaliation claim, the Court liberally construes her Complaint as invoking § 1983. (*See id.*)

12

      (4)      punitive damages against Riverside of $3 million;

      (5)      punitive damages against Kindred of $2 million; and,

      (6)      punitive damages against Jones, Brown, Flippin, Gordon, Holland, Bain, Wilson, Edmonds, Samples and Moore of $100,000 each.

(Am. Compl. 16.)

On April 20, 2019, approximately five days after Riverside revoked her security clearance, Rawls-Dolin filed a charge with the EEOC. (*Id.* 16.) On July 31, 2019, Rawls-Dolin received a Notice of Right to Sue from the EEOC. (*Id.*) On October 9, 2019, Rawls-Dolin initiated this action in federal court.

## II.  Standards of Review

### A.  Obligation to Liberally Construe *Pro Se* Pleadings

Because Rawls-Dolin proceeds *pro se*, the Court liberally construes her filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted). Nonetheless, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Federal Rule of Civil Procedure 8 for "all civil actions"). A *pro se* plaintiff litigant must allege facts sufficient to state a cause of action. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk v. Cir. Ct. of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014) (internal quotation marks and citations omitted).

**B.**   **Rule 12(b)(1)**

Federal district courts are courts of limited subject matter jurisdiction. *United States ex rel. Vuyvuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)). This Court must, as a result, determine whether it has jurisdiction over the claims at issue. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'") (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation . . ." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1)).

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) can attack subject matter jurisdiction in two ways. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a challenge, a court assumes the truth of the facts alleged by plaintiff. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

Alternatively, a Rule 12(b)(1) motion may also challenge the existence of subject matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a case, because a party challenges the court's "'very power to hear the case,'" the trial court is free to weigh evidence to determine the existence of jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

Here, the Riverside Defendants Motion to Dismiss asserts that because Rawls-Dolin has admitted that she was not a Riverside employee, the Court lacks subject matter jurisdiction to review her Title VII claim against Riverside. Because this argument challenges whether Rawls-Dolin has established a claim upon which subject matter jurisdiction can lie, the Court will presume the truthfulness of Rawls-Dolin's allegations. *See Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768; *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

### C.     Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a Complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  To survive Rule 12(b)(6) scrutiny, a Complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.")  Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555.  Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the Complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193 (citation omitted).  The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 676–79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all

of the factual allegations contained in the Complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus.*, 637 F.3d at 440)).

### III. Analysis

Because the pending motions raise many of the same issues, the Court will address the issues by topic rather than by individual motion.  First, the Court will address the defendants' arguments as to the Title VII claims.  In deciding the Title VII claims, the Court will evaluate Rawls-Dolin's Title VII claims against the individual defendants, and then Rawls-Dolin's Title VII claim against Riverside.  Because Title VII does not provide for individual liability, the Court will dismiss the Title VII claims against the individual defendants.  Because Rawls-Dolin admits that she was not a Riverside employee, the Court will dismiss the Title VII claim against Riverside.

Second, the Court will turn to the fact that 18 U.S.C. § 242 (criminal willful deprivation of constitutional rights, privileges, and immunities) and § 245 (criminal willful harm by force or threat that affects any person's federally protected activities) do not provide for an individual right of recovery and will grant the motions to dismiss on this ground as well.  Third, the Court will discuss that Rawls-Dolin cannot maintain a First Amendment retaliation claim as to Brown and Gordon, but she sufficiently alleges such claims against Jones and Riverside.  Finally, the Court will address and deny Rawls-Dolin's remaining motions.

### A.     The Court Will Dismiss Rawls-Dolin's Title VII Claims[15]

Reading the Amended Complaint liberally, Rawls-Dolin appears to bring her Title VII claims against all twelve defendants.  The Court will first dismiss the Title VII claims against the individual defendants because Title VII does not provide for individual liability.  The Court will then dismiss the Title VII claims against Riverside because Rawls-Dolin has admitted that she was not a Riverside employee.

#### 1.     Legal Standard:  Title VII, Generally

Title VII states that employers cannot "discriminate against any individual with respect to [his or her] compensation, terms, conditions, or privileges of employment because of such

---

[15] The Riverside Defendants also bring their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), which allows a Court to dismiss a Complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  The Riverside Defendants contend that the Court lacks jurisdiction to consider Rawls-Dolin's Title VII claims because Rawls-Dolin failed to exhaust her administrative remedies as the claims in her Amended Complaint exceed the scope of her EEOC Charge. (*See, e.g.*, Mem. Supp. Mot. Dismiss 6, ECF No. 26.)

However, the Supreme Court of the United States has abrogated the United States Court of Appeals for the Fourth Circuit's holding in *Jones v. Calvert Group, Ltd.*, 551 F.3d 297 (4th Cir. 2009). In *Fort Bend County, Texas v. Davis*, the Supreme Court held that Title VII's requirement that a plaintiff file a charge with the EEOC prior to bringing suit constituted a mandatory requirement, but did not affect the reviewing court's jurisdiction. 139 S. Ct. 1843, 1852 (2019).  Therefore, a court "must enforce the rule if a party 'properly raise[s] it,'" but a plaintiff's failure to file an EEOC Charge does not affect a reviewing court's jurisdiction. *Id.* at 1849, 1852.

The Supreme Court has previously explained that "[m]andatory claim-processing rules are less stern [than jurisdictional requirements].  If properly invoked, mandatory claim-processing rules must be enforced, but they may be waived or forfeited. [C]laim-processing rules . . . [ensure] relief to a party properly raising them, but do not compel the same result if the party forfeits them." *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17–18 (2017) (internal quotation marks and citations omitted).

Although the Riverside Defendants timely raised a question of jurisdiction, whether Rawls-Dolin exhausted the administrative remedies on her Title VII claims no longer affects this Court's jurisdiction to consider them.  For this reason, the Court need not first decide whether Rawls-Dolin exhausted her administrative remedies.  Because Rawls-Dolin clearly failed to allege facts sufficient to state her claims, the Court will assume without deciding that Rawls-Dolin exhausted her administrative remedies.

individual's" race or sex.  42 U.S.C. § 2000e-2(a)(1).  Title VII also prohibits employers from
retaliating against employees who oppose "any practice made an unlawful employment
practice . . . or because he [or she] has made a charge, testified, assisted, or participated in any
manner in an investigation, proceeding or hearing."  42 U.S.C. § 2000e-3(a).  Similarly,
plaintiffs may bring a hostile work environment claim under Title VII "[w]hen the workplace is
permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or
pervasive to alter the conditions of the victim's employment and create an abusive working
environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal
citations omitted).

     The existence of an employee-employer or applicant for employment-employer
relationship remains a "threshold requirement" for Title VII liability.  *See* 42 U.S.C. § 2000e-
2(a) (defining unlawful employment practices); *Eghbali v. Dep't of Energy at Savannah River
Nat'l Lab*, 90 F. Supp. 3d 587, 592 (D.S.C. 2015) (overruling the plaintiff's objections and
adopting the magistrate judge's report and recommendation to dismiss plaintiff's Title VII claims
against the defendant because the plaintiff admitted that the defendant did not employ him).
Title VII defines an employer as "a person engaged in an industry affecting commerce who has
fifteen or more employees for each working day in each of twenty or more calendar weeks in the
current or preceding calendar year, and any agent of such a person."  42 U.S.C. § 2000e(b).  The
United States Court of Appeals for the Fourth Circuit has "expressly held that Title VII does not
provide a remedy against individual defendants who do not qualify as 'employers.'"  *Baird ex
rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (citation omitted).

2.   **Because Title VII Does Not Provide For Individual Liability, the Court Will Dismiss the Title VII Claims Against the Individual Defendants**

The Court begins with its conclusion that because Title VII does not provide for individual liability, it must grant the motions to dismiss brought against the individual defendants on this ground. The sexual harassment that Kindred subjected Rawls-Dolin to permeates the Amended Complaint. Rawls-Dolin identifies Title VII as a "[b]asis for jurisdiction" and seems to raise both a Title VII retaliation and hostile work environment claim against the individual defendants. She bases her claims on the defendants' role in retaliating against her for complaining about Kindred's behavior, creating a hostile work environment by having inappropriate conversations about her, engaging in sexual harassment, or threatening her with physical violence.

Here, Rawls-Dolin alleges that many of the individual defendants were employees of Riverside. For instance, she expressly recognizes that Kindred is a "Correctional Officer, Riverside." (Am. Compl. 1.) Similarly, she reports that Gordon is the "Director of Nursing, Wellpath d/b/a Correct Care Solutions (CCS)" and Edmonds is an "Officer, Federal Correctional Institute Petersburg." (*Id.* 2–3.) Because Title VII does not provide a cause of action against individuals and Rawls-Dolin attempts to assert her Title VII claims against the individual defendants, the Court must grant the pending motions to dismiss on this ground. *See Baird*, 192 F.3d at 472.

3.   **Because Rawls-Dolin Admits that She Was Not a Riverside Employee, the Court Will Dismiss the Title VII Claim Against Riverside**

Having dismissed the Title VII claims against the individual defendants, the Court turns to Rawls-Dolin's Title VII claim against Riverside. Because Rawls-Dolin admits, and must

admit, that she was not a Riverside employee, the Court will dismiss the Title VII claim against Riverside under Rule 12(b)(1).

Throughout her Amended Complaint Rawls-Dolin states that she was not a Riverside employee. For instance, she says that "[e]ven though I was not a [Riverside] employee, I utilized their [Standard Operating Procedure] and their chain of command in asking to meet with the Superintendent . . . regarding my investigation." (Am. Compl. 7.) Similarly, she asserts that she "was improperly subjected to treatment as a Riverside employee (which I was not)." (*Id.*) She also maintains that Riverside had her sign the incorrect form that "was not even applicable since [she] was not a [Riverside] employee." (*Id.* 8.) Rather, she identifies "Corizon and later Wellpath" as her employer, (*id.* 4), and states that Riverside "treated [her] as a common law employee," (*id.* 7).

To bring a Title VII claim against Riverside Rawls-Dolin must meet the "threshold requirement" of establishing an employee-employer relationship or applicant for employment-employer relationship between herself and Riverside. *Eghbali*, 90 F. Supp. 3d at 592. Rawls-Dolin has expressly and continuously admitted that she was not a Riverside employee. She has cited no authority to establish that a "common law employee" can maintain a Title VII claim. Therefore, the Court must dismiss her Title VII claim against Riverside pursuant to Rule 12(b)(1). *See id.*

**B.**   **Title 18, Section 245 Does Not Provide for an Individual Right of Recovery**

Having decided that it will dismiss the Title VII claims, the Court turns to Rawls-Dolin's claims under 18 U.S.C. § 245, a law that criminalizes willful harm by force or threat that affects any person's exercise of federally protected rights. Because that statute does not provide for a private cause of action, the Court will dismiss these claims as well.

21

Title 18, Section 245(b)(2)(C) provides, in pertinent part:

> Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with . . . any person because of his race, color, religion or national origin and because he is or has been . . . applying for or enjoying employment, or any perquisite thereof, by any private employer or any agency of any State or subdivision thereof, or joining or using the services or advantages of any labor organization, hiring hall, or employment agency; . . . shall be fined under this title, or imprisoned not more than one year, or both.

18 U.S.C. § 245(b)(2)(C). Title 18, Section 245 "provides for criminal penalties, not a private cause of action." *Dickerson v. Duncan*, No. 7:19cv802, 2020 WL 86456, at *2 (W.D. Va. Jan. 7, 2020); *see also Corbin v. Baggett*, No. 1:17cv129, 2017 WL 1194362, at *2 (M.D.N.C. Mar. 30, 2017) (report and recommendation stating that neither 18 U.S.C. §§ 242 or 245 "provide[] a private cause of action" (citations omitted)).[16]

Read liberally, Rawls-Dolin appears to bring her § 245 claim against Jones, Brown, and Gordon for their conduct in escorting her to her car "in excess of Riverside's [Standard Operating Procedures]." (Am. Compl. 7.) She asserts that she "was in fear of violence by the three as they had formed a mob to silence [her] for utilizing [her] First Amendment right to Protected Speech for speaking out about their wrongdoings." (*Id.*) Because 18 U.S.C. § 245 does not provide for a private cause of action, the Court will dismiss the § 245 claims and will grant the Gordon Motion to Dismiss and the Riverside Motion to Dismiss on this ground.

---

[16] In addition to 18 U.S.C. § 245, Rawls-Dolin also identifies 18 U.S.C. § 242, a law that criminalizes willful deprivation of constitutional rights, privileges, and immunities, as a basis for jurisdiction. Outside of identifying it as a basis for jurisdiction, Rawls-Dolin does not mention § 242 in her Amended Complaint. To the extent that Rawls-Dolin raises claims under § 242, the Court dismisses those claims because 18 U.S.C. § 242 does not provide a private cause of action. *See Corbin*, 2017 WL 1194362, at *2 (citations omitted).

**C.    The Court Will Dismiss the First Amendment Retaliation Claims Against Brown and Gordon and Will Deny the Motion to Dismiss as to the First Amendment Retaliation Claims Against Jones and Riverside**

Rawls-Dolin appears to bring her First Amendment retaliation claim against Riverside,[17] Jones, Brown, and Gordon.  (*See* Am. Compl. 7–8.)  Specifically, Rawls-Dolin contends that Jones revoked her security clearance "in retaliation for exercising [her First] Amendment right to Freedom of Speech (Protected Speech clause) regarding the sexual harassment complaint [she] had filed on March 28."  (*Id.* 7.)  Further, she alleges that Jones, Brown, and Gordon "had formed a mob to silence [her] for utilizing [her] First Amendment right to Protected Speech for speaking out about their wrongdoings," when they escorted her to her car after Jones revoked her security clearance.  (*Id.* 8.)  Finally, as to Riverside, Rawls-Dolin contends that "Jones [and] Riverside . . . both conspired to intimidate me for free exercise of my First Amendment protected speech rights in speaking about the prevalent sexual harassment that I was the unwanted recipient while working in . . . [Riverside's] facility."  (*Id.* 8.)

Because Rawls-Dolin fails to allege sufficient plausible facts to establish her First Amendment retaliation claim against Gordon and Brown, the Court will dismiss that claim as to Gordon and Brown.  However, because Rawls-Dolin, after liberally construing her Complaint, sufficiently alleges a First Amendment retaliation claim as to Jones and Riverside, Court will deny the Riverside Motion to Dismiss on this ground.

---

[17] In the Riverside Motion to Dismiss, Riverside includes a section entitled "Answer," in which it responds to Rawls-Dolin's First Amendment claim against Riverside.  (*See* Mem. Supp. Riverside Mot. Dismiss 13, ECF No. 26.)  However, rather than providing an Answer to this claim, Riverside argues that it is not liable to Rawls-Dolin under the First Amendment pursuant to Rule 12(b)(6).  Apparently, the heading "Answer" is not reflective of Riverside's position and will consider the Rule 12(b)(6) argument presented.

1.    **Legal Standard:  First Amendment Retaliation Claim**

"[A] First Amendment retaliation claim under § 1983 consists of three elements: (1) the

plaintiff engaged in constitutionally protected First Amendment activity, (2) the defendant took

an action that adversely affected that protected activity, and (3) there was a causal relationship

between the plaintiff's protected activity and the defendant's conduct." *Booker v. S.C. Dep't of

Corr.,* 855 F.3d 533, 537 (4th Cir. 2017); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d

676, 686 (4th Cir. 2000) (accord).[18]  This "same form of balancing analysis" applies to

employees and independent contractors alike. *Bd. Cnty. Comm'rs, Wabaunsee Cnty. v. Umbehr*,

518 U.S. 668, 678, 685 (1996).[19]

---

[18] The Court considers only whether Rawls-Dolin has stated a First Amendment
retaliation claim.  To be sure, "[t]o prevail on such a claim, a plaintiff must establish a causal
connection between the government defendant's retaliatory animus and the plaintiff's subsequent
injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (internal quotation marks and citation
omitted).  "It is not enough to show that an official acted with a retaliatory motive and that the
plaintiff was injured—the motive must cause the injury.  Specifically, it must be a 'but-for'
cause, meaning that the adverse action against the plaintiff would not have been taken absent the
retaliatory motive." *Id.*  Further discovery may shed light on whether Rawls-Dolin can meet this
"rigorous" requirement, but without further discovery, the Court cannot speculate as to the
outcome of what Rawls-Dolin may be able to prove. *Tobey*, 706 F.3d at 391.

[19] In *Umbehr* the Supreme Court explained: "The similarities between government
employees and government contractors with respect to [the First Amendment] is obvious. The
government needs to be free to terminate both employees and contractors . . . to improve the
efficiency, efficacy, and responsiveness of service to the public." *Id.* at 674.  Thus, the Court
held that the "existing framework for government employee cases [should be applied] to
independent contractors." *Id.* at 677.
    Courts within the Eastern District of Virginia also have held that the revocation of an
independent-contractor-plaintiff's security clearance may constitute "the loss of a valuable
benefit" for a First Amendment retaliation claim. *Vollette v. Watson*, 978 F. Supp. 2d 572, 582,
594 (E.D. Va. 2013) (ordering that sheriff remedy "the unconstitutional retaliatory revocation of
[plaintiffs'] security clearances" following bench trial).
    Here, Defendants do not challenge the sufficiency of facts on which Rawls-Dolin rests
her First Amendment retaliation claim. (*See* Mem. Supp. Riverside Mot. Dismiss. 7–12, ECF
No. 26.)  Importantly, only Riverside argues that Rawls-Dolin's complaints do not touch on a
matter of public concern.  But even Riverside does not cite to an absence of sufficient plausible

As to the first element, the Court must consider "whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest." *Brooks v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012) (quoting *McVey v. Stacy*, 157 F.3d 271 (4th Cir. 1998)). If speaking about the latter, a mere matter of personal interest, the litigant may not advance a First Amendment retaliation cause of action. When evaluating a First Amendment retaliation claim, "whether the speech addressed a matter of public concern, is 'the threshold question.'" *Id.* (quoting *Rankin v. McPherson*, 483 U.S. 378, 384 (1987)).

With respect to the second element, the determination as to whether a defendant's actions "adversely affected [the plaintiff's] First Amendment rights," *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citation omitted), courts must review this fact-specific inquiry by considering the actors involved and their relationships. *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006).

As to the third element, causation, a plaintiff must allege facts sufficient to show a causal connection between the First Amendment activity and the alleged adverse action. *See Constantine*, 411 F.3d at 501. "In order to establish this causal connection, a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [his or] her engaging in protected activity." *Id.* (citation omitted). However, "'[k]nowledge alone . . . does not establish a causal connection' between the protected activity and the adverse action." *Id.* (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)). There must also be circumstantial evidence, such as evidence that the retaliation took place within some "temporal proximity" of the protected activity, or direct evidence of a retaliatory motive. *Id.*

---

facts in the Amended Complaint. (*See id.* 14–15.) Without such information, the Court cannot grant the Motion to Dismiss on the limited record before it.

### 2. Because Rawls-Dolin Alleges No Facts in Support of a First Amendment Retaliation Claim Against Gordon and Brown, the Court Will Dismiss Those Claims

The Court begins by addressing Rawls-Dolin's First Amendment retaliation claims against Gordon and Brown. Rawls-Dolin states only that Jones, Brown, and Gordon "had formed a mob to silence [her] for utilizing [her] First Amendment right to Protected Speech for speaking out about their wrongdoings," when they escorted her to her car after Jones revoked her security clearance. (Am. Compl. 7.) Beyond this passing reference, Rawls-Dolin provides no facts to support a First Amendment retaliation claim against Brown and Gordon. Therefore, the Court will dismiss the First Amendment retaliation claim against Brown and Gordon. *See Francis*, 588 F.3d at 193 (stating that "naked assertions of wrongdoing necessitate some factual enhancement within the Complaint to cross the line between possibility and plausibility of entitlement to relief" (internal citations omitted)).

### 3. Because Rawls-Dolin Alleges Facts Sufficient to Support That Jones and Riverside Retaliated Against Her Constitutionally Protected Speech, the Court Will Deny the Riverside Motion to Dismiss as to Those Claims

Having decided that it will dismiss the First Amendment retaliation claims against Gordon and Brown, the Court turns to the First Amendment retaliation claim Rawls-Dolin alleges against Jones and Riverside. The Complaint, liberally construed, sufficiently alleges facts supporting the three prongs of a First Amendment retaliation claim, namely that: (1) Rawls-Dolin's complaints as to the sexual harassment regarded a matter of public concern; (2) Rawls-Dolin's interest in speaking on such a matter outweighed Jones and Riverside's interest in providing effective and efficient services to the public; and, (3) Rawls-Dolin's speech was a substantial factor in Jones and Riverside's decision to revoke Rawls-Dolin's security clearance and remove her from Riverside's premises. The Court notes that although Riverside

26

was the only defendant to present any argument as to First Amendment retaliation, the Court would make the same finding as to Jones had Jones adequately addressed Rawls-Dolin's claim.[20] Therefore, Rawls-Dolin sufficiently alleges a claim for First Amendment retaliation.

### a.   Public Concern

The Court concludes that Rawls-Dolin's Amended Complaint touches on a matter of public concern, satisfying the first prong of a First Amendment retaliation claim.

The Fourth Circuit does not draw "sharp lines for when a public employee's speech addresses a matter of public concern."[21] *Brooks*, 685 F.3d at 371.  Instead, the inquiry as to whether "[s]peech involves a matter of public concern" focuses on whether it "involves an issue of social, political, or other interest to a community." *Campbell v. Galloway*, 483 F.3d 258, 267 (4th Cir. 2007) (citation omitted).  "By contrast, '[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern . . . .'" *Willis v. City of Va. Beach*, 90 F. Supp. 3d 597, 608 (E.D. Va. 2015) (quoting *Stroman v. Colleton Cnty. Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992).  To determine whether an employee's speech touches a matter of public concern, the Court must consider the "content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983).

---

[20] Jones moves to dismiss Rawls-Dolin's First Amendment retaliation claim "because these actions were taken under her scope of employment as [a Riverside] Lieutenant." (Mem. Supp. Riverside Mot. Dismiss 12.)  Without more, the Court cannot ascertain how this defense either attacks the basis of Rawls-Dolin's First Amendment retaliation claim, or asserts any affirmative defense.

[21] Although case law discusses "public employee," these same First Amendment retaliation principles apply to independent contractors working for government organizations. *Umbehr*, 518 U.S. at 685; *Vollette*, 978 F. Supp. 2d at 584 n.17.

Taking the allegations as true and liberally construing the Amended Complaint, Rawls-Dolin appears to allege that Riverside systemically fails to properly conduct investigations into employee complaints, touching on Riverside's "inability . . . to carry out its vital public mission effectively." *Cromer v. Brown*, 88 F.3d 1315, 1325–26 (4th Cir. 1996) (finding that an internal letter of complaint touched on a matter of public concern by positing that "internal racial discrimination" curtailed "the effectiveness of the sheriff's office"). In her Amended Complaint, Rawls-Dolin recounts several instances when she confronted both her own and Kindred's supervisors about Kindred's alleged behavior. (*Id.* 4.) Rawls-Dolin claims that Riverside's management disregarded her informal complaints and instead "made excuses for [Kindred]." (*Id.* 14.) Rawls-Dolin propounds she made formal complaints to Riverside's Office of Professional Review ("OPR") on three different occasions. (*See* Am. Compl. 5, 6, 7.) Rawls-Dolin further alleges that she "utilized [Riverside's] SOP and [Riverside's] chain of command in asking to meet with the Superintendent . . . regarding [Rawls-Dolin's] investigation." (*Id.* 7.) Rawls-Dolin contends that because of her complaints, Jones revoked her security clearance "in retaliation for exercising [her First Amendment] right to Freedom of Speech (Protected Speech clause) regarding the sexual harassment complaint [that Rawls-Dolin] had filed on March 28." (*Id.* 2, 7).

Beyond stating that Edmonds "did not do a thorough, proper investigation" into her March 28, 2019 formal complaint, Rawls-Dolin claims that "[Riverside] does not ever conduct investigations, [sic] they just allow staff to fight amongst themselves." (*Id.* 6.) Rawls-Dolin speculates that this results in Riverside being "chronically short-staffed." (*Id.*) Again, Rawls-Dolin notes that Riverside has a "Zero Tolerance" policy, yet "abusive behaviors [go] unregulated" due to Riverside's "complacen[cy]." (*Id.* 15.) Rawls-Dolin avers that Brown said,

28

"[w]e need him (Defendant Kindred). We cannot get rid of him. We are short staffed." (*Id.* 10.) Rawls-Dolin alludes that such a systemic failure to investigate enabled Kindred because "he knew there would not be any ramifications." (*Id.* 14.)

Despite Rawls-Dolin's allegations largely focusing on the conduct of one correctional officer, Rawls-Dolin's Amended Complaint, read liberally, alleges that such behavior inhibits Riverside's "ability to carry out its vital public mission effectively." *See Willis*, 90 F. Supp. 3d at 609 (allowing the plaintiff to proceed beyond the motion to dismiss stage based on facts revolving around one officer's conduct because the allegations implicated public safety concerns).[22] Given the responsibility of correctional officers and their supervisors to maintain safety and order within the prison system, such performance issues create a serious risk of injury and implicate issues of concern to the public. *See id.* The Court recognizes that the Supreme Court has "expressed skepticism that speech in the context of an employment grievance proceeding addresses a public concern." *Brooks*, 685 F.3d at 371. And, the Supreme Court has

---

[22] The Court finds *Willis v. City of Virginia Beach*, 90 F. Supp. 3d 597, a recent Eastern District of Virginia case, instructive on the first prong of a First Amendment retaliation claim. In *Willis*, the district court determined that the plaintiffs, three Virginia Beach police officers, plausibly alleged that the Virginia Beach Police Department and the Chief of Police retaliated against them for their internal grievances that, if true, implicated the police department's "ability to carry out its vital public mission effectively." 90 F. Supp. 3d at 610. As a result, the *Willis* Court found dismissal at the 12(b)(6) stage inappropriate because "there is barely any record from which to glean the content, form, and context of the [plaintiffs'] statements." 90 F. Supp. 3d at 609.

Further, the *Willis* Court observed that weighing the parties' interests, under the second prong of a First Amendment retaliation claim, "may not be assessed under [the] Rule 12(b)(6) Motion, but is best addressed in Rule 56 summary judgment proceedings." *Id.* (citing *McVey*, 157 F.3d at 278–79) (finding dismissal inappropriate at the motion to dismiss stage when the parties' interests were not "resolved on [the] face" of the complaint).

Like the allegations raised in *Willis*, Rawls-Dolin's Amended Complaint does not resolve on its face whether Rawls-Dolin spoke on a matter of public concern. As such, the Court will allow Rawls-Dolin to proceed past the Motion to Dismiss stage on her First Amendment retaliation claim against Jones and Riverside. *See McVey*, 157 F.3d at 279.

instructed that "a petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public . . . beyond the employment context." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 398 (2011). Nonetheless, precedent warns against this Court finding dispositive the question of public concern based only on "the fact that the Plaintiff[] did not express [her] views publicly, but rather within the confines of [her] employment]." *Willis*, 90 F. Supp. 3d at 608–09 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006) ("Employees in some cases may receive First Amendment protection for expressions made at work.")).

At this procedural posture, discerning a matter of public concern cannot be evaluated in the absence of a "record from which to glean the content, form, and context" of Rawls-Dolin's statements regarding Jones and Riverside. *Willis*, 981 F.2d at 609. For Rule 12(b)(6) purposes, Rawls-Dolin plausibly alleges that her speech touched on a matter of public concern, thereby satisfying the first prong of a First Amendment retaliation claim brought under § 1983.

### b.   <u>Balance of Employee-Employer Interests</u>

The Court finds that Rawls-Dolin plausibly alleges that her interest in speaking about work conditions at Riverside outweighed the Defendants' interest in providing effective and efficient services to the public, thus satisfying the second prong of a First Amendment retaliation claim. *McVey*, 157 F.3d at 277.

For the second prong, the balance of employer and employee interests, the Court may consider numerous factors for this fact-specific inquiry. *Ridpath v. Bd. of Governors*, 447 F.3d 292, 317 (4th Cir. 2006). The Fourth Circuit has instructed courts to consider, among other things, whether the speech: (1) impaired discipline by superiors; (2) impaired harmony among co-workers; (3) had a detrimental impact on close-working relationships; (4) impeded the

30

performance of Rawls-Dolin's duties; (5) interfered with the operation of Riverside at large; (6) undermined Riverside's mission; (7) was communicated publicly or to co-workers in private; (8) conflicted with Rawls-Dolin's responsibilities as an employee; or, (9) invoked the authority and public accountability which Rawls-Dolin's role entailed. *Id.* (citing *McVey*, 157 F.3d at 278). "Many of these factors overlap with the inquiry into whether [Rawls-Dolin's] expression regarded a matter of public concern." *Willis*, 90 F. Supp. 3d at 611.

Drawing all factual inferences in Rawls-Dolin's favor, her Amended Complaint, taken as true, sufficiently alleges that her free speech interests outweigh the detrimental effect, if any, on Riverside. Jones and Riverside have not shown how Rawls-Dolin's complaints and inquiries into the OPR investigation impeded Riverside's public mission, considering Rawls-Dolin's allegations as to systemic failures in the investigatory process. Although Riverside, claims an interest in its "effective operation of the workplace," namely "preserv[ing] the integrity of the OPR investigation," (Joint Br. Supp. Mot. Dismiss and Answer 16, ECF No. 26), the Court must accept Rawls-Dolin's allegations that "Jones had [her] sign the incorrect forms on March 28," (Am. Compl. 7). Therefore, nothing in the Complaint indicates that Rawls-Dolin's allegations of sexual harassment impaired the maintenance of discipline, hurt workplace morale, or impeded Rawls-Dolin from carrying out her duties.

While discovery may develop the factual record to show that Rawls-Dolin's speech impaired Riverside's operations, "that determination may not be assessed under this Rule 12(b)(6) Motion." *Willis*, 90 F. Supp. 3d at 611 (citing *McVey*, 157 F.3d at 278–79) (affirming the district court's finding that the plaintiff stated a retaliation claim because the complaint did not "resolve on its face" the balance of government-employee interests). At this juncture, Rawls-

Dolin has sufficiently shown that her interest in speaking outweighed Jones and Riverside's interests in providing effective and efficient services to the public.

### c.     **Causal Relationship**

Finally, the Court determines that Rawls-Dolin's Complaint sufficiently alleges that Jones and Riverside treated Rawls-Dolin's protected speech a "substantial factor" leading to the adverse employment action, satisfying the third prong of a First Amendment retaliation claim. *McVey*, F.3d at 277–78.

To satisfy the third prong of a First Amendment retaliation claim, Rawls-Dolin must allege there was "some degree of temporal proximity to suggest a causal connection" between her speech and her being disciplined. *Constantine*, 411 F.3d at 501. Additionally, Rawls-Dolin must also "plead factual allegations supporting the inference that [her] 'protected speech was a motivating factor . . . in inducing the adverse action'" taken by Jones and Riverside.[23] *Willis*, 90 F. Supp. 3d at 612–13 (quoting *Peters v. Jenney*, 327 F.3d 307, 323 (4th Cir. 2007)). "Ultimately, the causation requirement is 'rigorous in that the protected expression must have

---

[23] As this Court recently explained in the employment context, an adverse action must be material:

> While the analysis of an adverse action depends on the particular circumstances of the case, an adverse action must be material. All adverse action tests require that there be an adverse employment action, which denotes some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it. Mere dislike of or disagreement with an employer's decisions does not invariably make those decisions ones that adversely affected some aspect of employment.

*Anderson v. Sch. Bd. of Gloucester Cty., Virginia*, No. 3:18cv745, 2020 WL 2832475, at *16 (E.D. Va. May 29, 2020) (internal quotation marks and citations omitted). Nonetheless, acknowledging the limited record, the Court will allow this claim to proceed past the Motion to Dismiss stage.

been the but for cause of the adverse employment action alleged.'" *Id.* (quoting *Ridpath*, 447 F.3d at 318).

Rawls-Dolin alleges that from late 2018 to early 2019, she made numerous complaints as to instances of alleged sexual harassment and the nature of the OPR investigation. On April 15, 2019, Rawls-Dolin claims that she "complained again" about her March 28, 2019 sexual harassment complaint. (Am. Compl. 7.) Rawls-Dolin alleges that that same day, approximately two weeks after filing her formal complaint, Jones then revoked Rawls-Dolin's security clearance "in retaliation for exercising [her First] Amendment right to Freedom of Speech (Protected Speech clause) regarding the sexual harassment complaint [that Rawls-Dolin] had filed on March 28." (*Id.*) Rawls-Dolin's allegations show that no "'lengthy time lapse[d]' between the protected expression and the discipline" that would tend to "negate [an] inference that a causal connection exists between the two." *Willis*, 90 F. Supp. 3d at 612–13 (quoting *Constantine*, 411 F.3d at 501)).

Liberally construing and accepting Rawls-Dolin's allegations as true, Rawls-Dolin sufficiently claims that "but for" her protected speech, Jones and Riverside would not have revoked her security clearance. Accordingly, the Court finds that Rawls-Dolin sufficiently alleges facts to proceed past the Motion to Dismiss stage on ONE claim—First Amendment retaliation against Jones and Riverside.

### D. The Court Will Deny Rawls-Dolin's Request for a Subpoena and Deny the Remaining Motions

Having resolved Rawls-Dolin's claims again the Defendants, the Court turns to Rawls-Dolin's pending motions. Four motions brought by Rawls-Dolin pend: (1) the Motion for Subpoena, (ECF No. 29); (2) the Motion for Default Judgment, (ECF No. 46); (3) the Motion to

File Electronically, (ECF No. 3); and, (4) the Motion for Scheduling Order, (ECF No. 45).  The Court will deny Rawls-Dolin's four motions.

### 1.    The Court Will Deny the Motion for Subpoena

In the Motion for Subpoena, Rawls-Dolin asks this Court to issue a subpoena to Riverside compelling it to provide Rawls-Dolin with Wilson's address.  Rawls-Dolin states that she attempted to serve Wilson at Riverside, but Riverside stated that Wilson was "[r]etired, no forwarding address."  (Mot. Subpoena 1, ECF No. 29.)  Rawls-Dolin believes that Riverside "retains [Wilson's] last known address on file . . . for tax [and] insurance purposes."  (*Id.* (emphasis omitted).)

Federal Rule of Civil Procedure 4(m) provides that a plaintiff must serve the defendant within ninety (90) days.  *See* Fed. R. Civ. P. 4(m).  The rule further states that

> [i]f a defendant is not served within 90 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

*Id.*  District courts within the Fourth Circuit have found good cause to extend the ninety-day time period when the plaintiff has made "reasonable, diligent efforts to effect service on the defendant."  *Venable v. Dep't of Corr.*, No. 3:05cv821, 2007 WL 5145334, at *1 (E.D. Va. Feb. 7, 2007) (quoting *Hammad v. Tate Access Floors, Inc.*, 31 F. Supp. 2d 524, 528 (D. Md. 1999)).  Leniency is especially appropriate when factors beyond the plaintiff's control frustrate his or her diligent efforts.  *See McCollum v. GENCO Infrastructure Sols.*, No. 3:10CV210, 2010 WL 5100495, at *2 (E.D. Va. Dec. 7, 2010) (citing *T & S Rentals v. United States*, 164 F.R.D. 422, 425 (N.D. W.Va. 1996)).  Thus, courts are more inclined to find good cause where extenuating factors exist such as active evasion of service by a defendant, *T & S Rentals*, 164 F.R.D. at 425

(citing *Prather v. Raymond Constr. Co.*, 570 F. Supp. 278, 282 (N.D. Ga. 1982)), or stayed proceedings that delay the issuance of a summons. *McCollum*, 2010 WL 5100495, at *2 (citing *Robinson v. Fountainhead Title Grp. Corp.*, 447 F. Supp. 2d 478, 485 (D. Md. 2006)). However, "'[i]nadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service' generally are insufficient to show good cause." *Venable*, 2007 WL 5145334, at *1 (quoting *Vincent v. Reynolds Mem'l Hosp.*, 141 F.R.D. 436, 437 (N.D. W.Va. 1992)). While a court might take a plaintiff's *pro se* status into consideration when coming to a conclusion on good cause, *Lane v. Lucent Techs., Inc.*, 388 F. Supp. 2d 590, 597 (M.D.N.C. 2005), neither *pro se* status alone does constitute good cause. *Sewraz v. Long*, No. 3:08cv100, 2012 WL 214085, at *1–2 (E.D. Va. Jan. 24, 2012) (citations omitted).

Here, Rawls-Dolin attempted to serve Wilson at Riverside. Riverside stated that Wilson had retired and that it did not have a forwarding address for him. Neither the Motion for Subpoena nor the Motion for Default Judgment indicate that Rawls-Dolin has made "any effort at all on [her] part to find an address or the correct name in order to effect service for" Wilson. *Jones v. NaphCare Medical Dept.*, No. 3:19cv310, 2020 WL 5121290, at *2 (E.D. Va. Aug. 31, 2020). Thus, Rawls-Dolin fails to demonstrate that she made a "reasonable, diligent effort[] to effect service on the defendant." *Venable*, 2007 WL 5145334, at *1 (citation omitted) (internal quotation marks omitted). Accordingly, because Rawls-Dolin has not served Wilson within ninety days of filing her Amended Complaint and has failed to demonstrate good cause to excuse her failure or warrant an extension of time, the Court will dismiss Rawls-Dolin's claims against Wilson. *See* Fed. R. Civ. P. 4(m). For the same reasons, the Court will deny the Motion for Subpoena.

### 2.    The Court Will Deny the Motion for Default Judgment

In the Motion for Default Judgment, Rawls-Dolin requests that the Court enter default judgment against Wilson. (*See generally* Mot. Default J., ECF No. 46.) Rawls-Dolin recognizes that "[s]ervice has not been made on Wilson." (*Id.* 1.) Because Rawls-Dolin has not properly served Wilson, the Court cannot enter default judgment against him. The Court will deny the Motion for Default Judgment.

### 3.    The Court Will Deny as Moot the Motion to File Electronically and the Motion for Scheduling Order

The Court turns to Rawls-Dolin's final two motions: (1) the Motion to File Electronically; and, (2) the Motion for Scheduling Order. The Court will deny as moot both motions.

In the Motion to File Electronically, Rawls-Dolin seeks leave to file documents using the Court's CM/ECF system. She asserts that she "wish[es] to save the expense of paper filings and postage." (Mot. File 1, ECF No. 3.) In the Motion for Scheduling Order, Rawls-Dolin seeks a scheduling order "for further proceedings" in this matter. (Mot. Scheduling Order 1, ECF No. 45.) Because the Court does not grant *pro se* litigants access to electronic filing, the Court will deny as moot the Motion to File Electronically. Because the case will proceed in accordance with the standard rules and procedures for litigation in the Eastern District of Virginia upon issuance of this Memorandum Opinion and Order, the Court will deny as moot the Motion for Scheduling Order.

### IV. Conclusion

For the foregoing reasons, the Court will grant the Second Kindred Motion to Dismiss, (ECF No. 19) and the Gordon Motion to Dismiss, (ECF No. 41). The Court will grant in part and deny in part the Riverside Defendants Motion to Dismiss, (ECF No. 25), allowing

only the First Amendment retaliation claim brought against Jones and Riverside to proceed.  The Court previously provided Rawls-Dolin the opportunity to amend her Complaint, allowing her to explain her causes of action against Defendants.  Because the Court offered Rawls-Dolin an opportunity to address the deficiencies in her initial complaint—the Court presumes that Rawls-Dolin has stated her best case.  For this reason, the Court will dismiss with prejudice all claims except for the First Amendment retaliation claims brought against Jones and Riverside.

The Court will deny the Motion for Subpoena, (ECF No. 29), and the Motion for Default Judgment, (ECF No. 46).  The Court will deny as moot the First Kindred Motion to Dismiss, (ECF No. 10), the Motion to File Electronically, (ECF No. 3), and the Motion for Scheduling Order, (ECF No. 45).

An appropriate order shall issue.

_____
/s/
M. Hannah Lauck
United States District Judge

Date: 9/25/2020
Richmond, Virginia