IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**CHRISTINA RAWLS-DOLIN,**

      **Plaintiff,**

**v.**                                                             Civil Action No. 3:19cv740

**RIVERSIDE REGIONAL JAIL,** *et al.,*

      **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on three motions:

(1)    Defendants Riverside Regional Jail ("Riverside") and Lieutenant Charlene Jones's (collectively, "Defendants") Amended Motion for Summary Judgment[1] (the "Motion for Summary Judgment"), (ECF No. 68);

(2)    Plaintiff Christina Rawls-Dolin's Motion for Subpoena for Audio/Visual Records of Investigation (the "First Motion for Subpoena"), (ECF No. 75); and,

(3)    Rawls-Dolin's second Motion for Subpoena for Document Production of Investigation (the "Second Motion for Subpoena"), (ECF No. 76), (collectively, the "Motions for Subpoenas").

Rawls-Dolin, proceeding *pro se* in this action, timely responded to the Motion for Summary Judgment. (ECF No. 71.) Defendants replied, (ECF No. 73), and responded in opposition to the Motions for Subpoenas, (ECF No. 77). These matters are ripe for disposition.

---

[1] Defendants filed, along with the Amended Motion for Summary Judgment, a notice consistent with the requirements set forth in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Civil Rule 7(K). (ECF No. 70.)

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[2]

## I. Factual and Procedural Background

Rawls-Dolin, proceeding *pro se* and *in forma pauperis*, originally brought her Title VII and related-claims action against twelve defendants. Her claims stem from two related events: (1) the alleged sexual harassment perpetrated by Jordan Kindred, a Riverside employee, that she faced while working at Riverside; and, (2) Riverside's revocation of her security clearance, which resulted in Rawls-Dolin losing a necessary qualification to work at Riverside.

Because the Court dismissed all of Rawls-Dolin's claims except her First Amendment retaliation claim against Riverside and Lieutenant Jones, the Court will review only those facts relevant to the instant motions.

### A. Factual Background[3]

Rawls-Dolin acknowledges, as she must, that she was not a Riverside employee, but states that she "was employed at . . . Riverside . . . starting in late October 2017 through Corizon and later Wellpath as a Mental Health Professional." (Am. Compl. 4.) For example, Rawls-Dolin avers that she "was improperly subjected to treatment as a Riverside employee (which [she] was not)." (*Id.* 7.) Rather, she identifies "Corizon and later Wellpath" as her employer, (*id.* 4), and states that Riverside "treated [her] as a common law employee," (*id.* 7). She states

---

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Rawls-Dolin identifies her "[b]asis for jurisdiction" as the First Amendment of the United States Constitution. (Am. Compl. 3, ECF No. 9.)

[3] In ruling on the Motion for Summary Judgment, the Court will view the undisputed facts and all reasonable inferences therefrom in the light most favorable to Rawls-Dolin as the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

that although she "was never terminated from [her] employment with Wellpath," on April 15, 2019, her "security clearance was revoked and [she was] forcefully removed from the [Riverside] site." (*Id.* 7–8.)

Rawls-Dolin alleges that Kindred worked as a Riverside Correctional Officer during her time at Riverside. (*Id.* 1.) She states that Kindred's inappropriate actions began "at the start of [her] employment" and continued "throughout [her sixteen] months of employment." (*Id.* 4, 10.) Rawls-Dolin maintains that "Kindred was always the aggressor."[4] (*Id.* 12.) She asserts that other employees observed some of Kindred's behavior and that several Riverside employees knew of Kindred's propensity for this type of behavior. (*See id.* 4, 12.)

On September 5, 2018, approximately one year after she began working at Riverside, Rawls-Dolin reported Kindred's behavior to "Captain Rochelle informally through communication." (*Id.* 9.) She states that "Captain Rochelle talked to Kindred about his behavior and to leave [Rawls-Dolin] alone." (*Id.*) On March 28, 2019, approximately two weeks before Riverside terminated her security clearance, Rawls-Dolin again reported Kindred's behavior. (*Id.* 9.) In this instance, Rawls-Dolin "wrote an official grievance, which very briefly discussed pervasive sexual harassment, stalking and [Kindred's] obsession during [her] entire [sixteen] months of employment at [Riverside]." (*Id.*)

That day, Riverside interviewed Rawls-Dolin, during which time Rawls-Dolin signed an Office of Professional Review ("OPR") Investigation Warning Form (the "Investigation Form").

---

[4] Rawls-Dolin alleges that Kindred "groom[ed] [her] with sexual coercion for months." (Am. Compl. 12.) On August 25, 2018, Rawls-Dolin admits that she and Kindred had a sexual encounter which she "felt [was] the only way Kindred would leave [her] alone," but it led to further harassment. (*Id.* 4–5.) Rawls-Dolin avers that she "concealed [her] shame, humiliation and the abuse that occurred [eight] months prior." (*Id.* 13.) Rawls-Dolin alleges she confronted Kindred, which again reaped no improvement in behavior. (*Id.*)

3

(*See* Answer Ex. 5 "Rawls-Dolin Investigation Warning" 1, ECF No. 51-5.)[5] The Investigation Form provides:

> This investigation is *confidential*. In order to ensure that the integrity of the investigation is preserved, you *shall not* discuss the allegation, investigation, or interview nor allow anyone else to gain access to any information without the expressed authorization of the Superintendent, his [or her] designee, or the Office of Professional Review (OPR). To do so would be considered a violation of the Riverside Regional Jails Standard Operating Procedures (SOP) 1.5 outlined in (Section III-C-5, d).

(*Id.* (emphasis in original).)

After her interview, Rawls-Dolin alleges that she "attempted to speak to someone again about the retaliation and discrimination from reporting sexual harassment," and spoke with Captain Tara Wyche, "Kindred's immediate supervisor." (Am. Compl. 10.) Captain Wyche replied that she "[did] not want to get involved if [the matter] is with OPR." (*Id.*) In her affidavit, Captain Wyche declares that she "immediately cut off the conversation [between her and Rawls-Dolin] because [she knew] OPR investigations are confidential." (*See* Answer Ex. 3 "Affidavit of Captain Tara Wyche," ECF No. 51-3.) Captain Wyche then reported the conversation to Lieutenant Jones. (Am. Mem. Supp. Mot. Summ. J. Ex. 6 "Affidavit of Superintendent Karen Craig" 1; ECF No. 69-6.)

Based on her conversation with Captain Wyche, Lieutenant Jones revoked Rawls-Dolin's security clearance for breach of confidentiality. (*Id.* 1.) Rawls-Dolin explains that "[Lieutenant]

---

[5] Either party may submit as evidence "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to support a factual assertion made in a motion for summary judgment. Fed. R. Civ. P. 56(c)(1)(A).

Defendants appear to incorporate by reference some exhibits attached to the Answer filed on October 21, 2020. (ECF No. 56.) Rawls-Dolin notes the absence of the exhibit on the Motion for Summary Judgment. (Resp. 2, ECF No. 71.) Despite Rawls-Dolin's contention and the Court's standard practice, the Court will consider the exhibits attached to the Answer before the Court as incorporated by reference here. *See Hicks v. Pixley*, 1:16cv189, 2019 WL 4576269, at *1 (E.D. Va. Sept. 20, 2019) (allowing the same).

Jones asserted [that Rawls-Dolin] violated a non-disclosure form" as the reason that Lieutenant Jones revoked Rawls-Dolin's security clearance, but Rawls-Dolin maintains that "[Lieutenant] Jones had [her] sign the incorrect forms on March 28." (Am. Compl. 7.) She also alleges that the form "was not even applicable since [she] was not a [Riverside] employee." (*Id.* 8.) Here, Rawls-Dolin alleges that Defendants retaliated against her "for exercising [her First] Amendment right to Freedom of Speech (Protected Speech clause) regarding the sexual harassment complaint [that Rawls-Dolin] had filed on March 28." (*Id.* 7.)

In her Amended Complaint, Rawls-Dolin posits that despite her efforts, "[Riverside] does not ever conduct investigations, [sic] they just allow staff to fight amongst themselves." (*Id.* 6.) Rawls-Dolin speculates that this results in Riverside being "chronically short-staffed." (*Id.*) Rawls-Dolin alleges that Riverside has a "Zero Tolerance" policy, yet "abusive . . . behaviors [go] unregulated" due to Riverside's "complacen[cy]." (*Id.* 15.) Rawls-Dolin believes that Riverside "intentionally accommodated [her] aggressor, Kindred" and that "no investigation was conducted." (*Id.* 10.) Accordingly, Rawls-Dolin alleges that "[Kindred] knew there would not be any ramifications." (*Id.* 14.)

During her employment at Riverside, Rawls-Dolin avers she made formal complaints to Riverside's OPR on three different occasions from late 2018 to early 2019. (*Id.* 5–7.) Further, Rawls-Dolin alleges she "utilized [Riverside's] [Standard Operating Procedure] and [Riverside's] chain of command in asking to meet with the Superintendent . . . regarding [Rawls-Dolin's] investigation." (*Id.* 7.) Rawls-Dolin alleges that Riverside's failure to "address[] the matter . . . would deter any other woman from [approaching] OPR to talk about abuse within [Riverside]." (*Id.* 13.)

5

### B. Procedural Background

Rawls-Dolin originally filed five cases in this Court against various defendants, all arising from the actions specified in the Amended Complaint. (*See* Oct. 23, 2019 Order 1, ECF No. 8.) Although the Court concluded that Rawls-Dolin "sufficiently states a claim in each of her five Complaints to survive the *in forma pauperis* gatekeeping statute," the Court ordered her to file a single Amended Complaint against all defendants to avoid "piecemeal litigation." (*Id.* 2.)

Rawls-Dolin timely filed the Amended Complaint, identifying three statutes and one constitutional amendment as the "Basis for Jurisdiction." (Am. Compl. 3, ECF No. 9.) First, she relied on Title VII and states that she brings claims based on "race, color, gender, religion, [and] national origin." (*Id.*) Second, she identified 18 U.S.C. § 245(b)(2)(C)[6] and 18 U.S.C. § 242 as statutes that afford her relief.[7] Finally, she lodged a claim under the "United States Constitution First Amendment [R]ight to Freedom of Speech (Protected Speech Clause)."[8] (*Id.*)

---

[6] Title 18, Section 245(b)(2)(C) states, in pertinent part:

> Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with . . . any person because of his race, color, religion or national origin and because he is or has been . . . applying for or enjoying employment, or any perquisite thereof, by any private employer or any agency of any State or subdivision thereof, or joining or using the services or advantages of any labor organization, hiring hall, or employment agency . . . shall be fined under this title, or imprisoned not more than one year, or both.

18 U.S.C. § 245(b)(2)(C).

[7] Title 18, Section 242 states, in pertinent part:

> Whoever, under color of any law . . . willfully subjects any person in any State, Territory, Commonwealth, . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . on account of such person being an alien, or by reason of his color, or race,

6

Rawls-Dolin seeks a considerable amount of damages against the remaining defendants, including:

  (1)  actual damages against Riverside of $1,122,000;
  (2)  actual damages against Lieutenant Jones of $156,100 each; and,
  (3)  punitive damages against Riverside of $3 million;

(*Id.* 16.)

On April 20, 2019, approximately five days after Riverside revoked her security clearance, Rawls-Dolin filed a charge with the EEOC. (*Id.*) On July 31, 2019, Rawls-Dolin received a Notice of Right to Sue from the EEOC. (*Id.*) On October 9, 2019, Rawls-Dolin timely initiated this action in federal court. (ECF No. 1.)

On September 25, 2020, the Court granted Defendant Kindred's second Motion to Dismiss, (ECF No. 19), and Defendant Erica Gordon's Motion to Dismiss, (ECF No. 41). The Court granted in part and denied in part the Riverside Motion to Dismiss. (ECF No. 25.) The Court dismissed all other claims raised against Jordan Kindred, Sergeant Devin Holland, Lieutenant William Bain, Sergeant Brandon Edmonds, Sergeant Angela Moore, Sergeant Nicholas Samples Jr., Sergeant Shanta Brown, Major Dawn Flippin, and Erica Gordan. Only

---

than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 242.

[8] The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I.

Although Rawls-Dolin does not identify 42 U.S.C. § 1983 as the statutory vehicle through which her First Amendment claim must proceed, the Court liberally construes her Complaint as invoking § 1983 because Rawls-Dolin identifies a First Amendment Retaliation claim. (Sept. 25, 2020 Mem. Op. 12, ECF No. 49.)

7

Rawls-Dolin's First Amendment retaliation claim lodged against Lieutenant Jones and Riverside remains as the Court dismissed all other claims against them.

On April 14, 2021, Defendants filed the instant Motion for Summary Judgment. (ECF No. 68.) Rawls-Dolin responded, (ECF No. 71), and Defendants replied, (ECF No. 73).[9] On May 7, 2021, Rawls-Dolin filed the Motions for Subpoena, (ECF Nos. 75, 76), and Defendants responded in opposition, (ECF No. 77). Rawls-Dolin has not replied, and the time to do so has expired.

## II. Standards of Review

### A. Obligation to Liberally Construe *Pro Se* Pleadings

Because Rawls-Dolin proceeds *pro se*, the Court liberally construes her filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotation marks and citations omitted)). Nonetheless, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal

---

[9] Without seeking leave to do so, Rawls-Dolin filed a supplemental response to the Motion for Summary Judgment. (ECF No. 74.) Eastern District of Virginia Local Civil Rule 7 prohibits a party from filing a sur-reply without first obtaining leave of Court. E.D. Va. Loc. Civ. R. 7(F)(1) ("No further briefs . . . may be filed without first obtaining leave of Court."). A court has the discretion to grant a responding party leave to file a sur-reply when the moving party has raised new arguments or brought forth new material in its reply brief. *Dillard v. Kolongo*, No. 1:16cv1060, 2017 WL 2312988, at *6 (E.D. Va. May 25, 2017). Generally, the Court would disregard those new arguments raised for the first time in a reply brief and deny the request for a sur-reply.

The Court will not consider ECF No. 74. Despite deference to her *pro se* status, Rawls-Dolin did not seek leave of Court to file a sur-reply. Additionally, the Court does not see any new arguments or material brought in the supplemental response that would warrant a sur-reply. Because the sur-reply largely represents the Parties' efforts "to have the last word on the matter," the Court will disregard ECF No. 74. *Lismont v. Alexander Binzel Corp.*, No. 2:12cv592, 2014 WL 12527239, at *3 (E.D. Va. May 23, 2014).

district court. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Federal Rule of Civil Procedure 8 for "all civil actions"). A *pro se* plaintiff litigant must allege facts sufficient to state a cause of action. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk v. Cir. Ct. of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014) (internal quotation marks and citations omitted).

### B. Rule 56 Summary Judgment

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Liberty Lobby*, 477 U.S. at 248–50.

"A fact is material if the existence or non-existence thereof could lead a [finder of fact] to different resolutions of the case." *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 628 (E.D. Va. 2016) (citing *Liberty Lobby*, 477 U.S. at 248). Once a party has properly filed evidence supporting its motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322–24. The parties must present these in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Liberty Lobby*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia*

9

*Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his [or her] evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (*en banc*) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

In the end, the non-moving party must do more than present a scintilla of evidence in its favor.

> Rather, the non-moving party must present sufficient evidence such that reasonable jurors could find by a preponderance of the evidence for the non-movant, for an apparent dispute is not genuine within contemplation of the summary judgment rule unless the non-movant's version is supported by sufficient evidence to permit a reasonable [finder of fact] to find the facts in his [or her] favor.

*Sylvia Dev. Corp.*, 48 F.3d at 818 (internal quotations, citations, and alterations omitted). The ultimate inquiry in examining a motion for summary judgment is whether there is "sufficient evidence favoring the nonmoving party for a [finder of fact] to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (internal citations omitted).

### C. First Amendment Retaliation Against Public Employees

"[A] First Amendment retaliation claim under § 1983 consists of three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity, (2) the defendant took an action that adversely affected that protected activity, and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 537 (4th Cir. 2017); *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000) (accord).

Regarding public employees, "[t]he First Amendment protects not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of

10

that right." *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (internal quotations and citations omitted). Therefore, "[t]he First Amendment protects public employees from termination of their employment in retaliation for their exercise of speech on matters of public concern." *McVey v. Stacy*, 157 F.3d 271, 277 (4th Cir. 1998).

Public employees' right of expression is not without limits. The government retains an interest in "effectiveness, efficiency, order, and the avoidance of disruption" and therefore "has an interest in regulating the speech of its employees." *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 145 (1983)). In weighing a public employee's right to speak on a matter of concern against the government's interest in promoting efficient administration, courts in the United States Court of Appeals for the Fourth Circuit apply a three-part test (the "*McVey* test"), determining:

> (1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's speech was a substantial factor in the employee's [adverse employment] decision.

*Adams*, 640 F.3d at 560–61 (quoting *McVey*, 157 F.3d at 277–78).

As to the first *McVey* factor, that the public employee was "speaking as a citizen on a matter of public concern," a litigant may not advance a First Amendment retaliation cause of action concerning a matter of mere personal interest. *Id.* at 560 (quoting *McVey*, 157 F.3d at 277). For a First Amendment retaliation claim, "whether the speech addressed a matter of public concern, is 'the threshold question.'" *Brooks v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012) (quoting *Rankin v. McPherson*, 483 U.S. 378, 384 (1987)). "Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Kirby v. City of Elizabeth City*, 388 F.3d 440, 446 (4th Cir. 2004) (citation omitted). In determining whether an employee's speech or activity addresses a matter of public concern, the court must

11

consider "the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48.

With respect to the second *McVey* factor, "whether the employee's interest in speaking . . . outweighed the government's interest in providing effective and efficient services to the public," *Adams*, 640 F.3d at 560–61 (quoting *McVey*, 157 F.3d at 277–78), courts must review this fact-specific inquiry, in light of the actors involved and their relationships. *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006). In weighing this factor, the court must consider the "employee's role in the government agency, and the extent to which it disrupts the operation and mission of the agency."[10] *McVey*, 157 F.3d at 278 (citation omitted). An employee "who has a confidential, policymaking, or public contact role and speaks out in a manner that interferes with or undermines the operation of the agency, its mission, or its public confidence, enjoys substantially less First Amendment protection than does a lower level employee." *Id.*

As to the third element, "whether the employee's speech was a substantial factor in the employee's [adverse employment] decision," *Adams*, 640 F.3d at 561 (quoting *McVey*, 157 F.3d at 277–78), a plaintiff must allege facts sufficient to show a causal connection between the First Amendment activity and the alleged adverse action. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005). "In order to establish this causal

---

[10] The *McVey* Court also set out nine factors relevant to this inquiry, including:

> whether the employee's speech (1) impairs discipline by superiors; (2) impairs harmony among co-workers; (3) has a detrimental impact on close working relationships; (4) impedes the performance of the public employee's duties; (5) interferes with the operation of the agency; (6) undermines the mission of the agency; (7) is communicated to the public or to co-workers in private; (8) conflicts with the responsibilities of the employee within the agency; and (9) makes use of the authority and public accountability the employee's role entails.

*McVey*, 157 F.3d at 278 (internal quotations and citation omitted).

connection, a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [his or] her engaging in protected activity." *Id.* (citation omitted). However, "'[k]nowledge alone . . . does not establish a causal connection' between the protected activity and the adverse action." *Id.* (citation omitted). "There must also be some degree of temporal proximity to suggest a causal connection." *Id.*

### III. Analysis

The Court will grant the Motion for Summary Judgment. To advance on her First Amendment retaliation claim, Rawls-Dolin must show under a favorable reading that a genuine dispute of material fact exists as to whether (1) Rawls-Dolin was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) her interest in speaking upon the matter of public concern outweighed Defendants' interest in providing effective and efficient services to the public; and, (3) her speech was a substantial factor in Defendants' decision to revoke her security clearance. *Adams*, 640 F.3d at 560–61 (quoting *McVey*, 157 F.3d at 277–78).

Rawls-Dolin's claim fails on the second element. Although a genuine dispute of material fact exists as to whether Rawls-Dolin's speech touched on a matter of public concern, the Court finds that even under a reading most favorable to her, Defendants' interest in providing effective and efficient services outweighs Rawls-Dolin's interest in speaking with Captain Wyche about the status of the OPR investigation. Because Rawls-Dolin cannot succeed on the second element necessary to show a First Amendment retaliation claim, the Court must grant the Motion for Summary Judgment.

### B. A Genuine Dispute of Material Fact Exists as to Whether Rawls-Dolin's Speech Touched on a Matter of Public Concern

Read in a light most favorable to Rawls-Dolin, a genuine dispute of material fact exists as to whether Rawls-Dolin's speech touched on a matter of public concern.

The Fourth Circuit does not draw "sharp lines for when an employee's speech addresses a matter of public concern."[11] *Brooks*, 685 F.3d at 371. Instead, the inquiry as to whether "[s]peech involves a matter of public concern" focuses on whether it "involves an issue of social, political, or other interest to a community." *Campbell v. Galloway*, 483 F.3d 258, 267 (4th Cir. 2007) (citation omitted). "By contrast, '[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern . . . .'" *Willis v. City of Va. Beach*, 90 F. Supp. 3d 597, 608 (E.D. Va. 2015) (quoting *Stroman v. Colleton Cnty. Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992)). To determine whether an employee's speech touches a matter of public concern, the Court must consider the "content, form, and context of a given statement, as revealed by the whole record." *Myers*, 461 U.S. at 147–48.

Reading the facts in a light most favorable to her, Rawls-Dolin appears to have broached the subject of Riverside's failure to properly investigate her claims, touching on Riverside's "inability . . . to carry out its vital public mission effectively." *Cromer v. Brown*, 88 F.3d 1315, 1325–26 (4th Cir. 1996) (finding that an internal letter of complaint touched on a matter of public concern by positing that "internal racial discrimination" curtailed "the effectiveness of the sheriff's office"). In her Amended Complaint, Rawls-Dolin recounts several instances during which she confronted both her own and Kindred's supervisors about Kindred's alleged behavior.

---

[11] Although case law discusses "public employee," these same First Amendment retaliation principles apply to independent contractors working for government organizations. *Vollette v. Watson*, 978 F. Supp. 2d 572, 584 n.17 (E.D. Va. 2013).

14

Rawls-Dolin claims that Riverside's management disregarded her informal complaints and instead "made excuses for [Kindred]." (Am. Compl. 14.) Rawls-Dolin also propounds that she made formal complaints to Riverside's OPR on three different occasions. (*See id.* 5–7.) Rawls-Dolin further alleges that she "utilized [Riverside's] SOP and [Riverside's] chain of command in asking to meet with the Superintendent . . . regarding [her] investigation." (*Id.* 7.) Rawls-Dolin contends that because of her complaints, Lieutenant Jones revoked her security clearance[12] "in retaliation for exercising [her First Amendment] right to Freedom of Speech (Protected Speech clause) regarding the sexual harassment complaint [that Rawls-Dolin] had filed on March 28." (*Id.* 2, 7).

Defendants allege that Rawls-Dolin's speech at issue should be narrowly construed to only her conversation with Captain Wyche. The Court need not distinguish between Rawls-Dolin's allegations and her conversation with Captain Wyche because the two share a common thread under a favorable reading: Rawls-Dolin's attempts to speak out against Riverside's alleged failure to properly investigate her claims and the alleged retaliation against her. Rawls-Dolin argues that she spoke with Captain Wyche in an attempt to again speak with someone "about the retaliation and discrimination from reporting sexual harassment." (*Id.* 10.) Even Captain Wyche's affidavit, which Defendants incorporate by reference in their Motion for Summary Judgment, does not rule out such a possibility. (*See* Wyche Aff.) In her affidavit, Captain Wyche declares that Rawls-Dolin came to speak with her about "the status of an OPR investigation into Officer Kindred." (*Id.* 1.) Captain Wyche states that she "immediately cut off

---

[12] Courts within the Eastern District of Virginia have held that the revocation of an independent-contractor-plaintiff's security clearance may constitute "the loss of a valuable benefit" for a First Amendment retaliation claim. *Vollette*, 978 F. Supp. 2d at 582, 594 (ordering that sheriff remedy "the unconstitutional retaliatory revocation of [plaintiffs'] security clearances" following bench trial).

the conversation [between her and Rawls-Dolin] because I know OPR investigations are confidential." (*Id.*)

As such, Captain Wyche's testimony that Rawls-Dolin spoke of the "status" of the OPR investigation before the conversation ended does not dispel a genuine dispute of material fact that Rawls-Dolin approached her to raise concerns as to Riverside's failure to investigate sexual harassment claims. (*See id.*) Therefore, a favorable reading allows the Court to draw the inference that Rawls-Dolin's speech at issue "involve[d] an issue of social, political, or other interest to a community," satisfying the first prong of a First Amendment retaliation claim. *Campbell*, 483 F.3d at 267 (citation omitted).

### B. Nevertheless, the Court Must Grant Summary Judgment Because No Genuine Dispute of Material Fact Exists as to Whether Defendants' Interest in Confidentiality Outweighed Rawls-Dolin's First Amendment Right

Even under a favorable reading, the Court concludes that no genuine dispute of material fact exists as to whether Defendants' interest in providing effective and efficient services to the public outweighs Rawls-Dolin's right to speak about her investigation. Because no genuine dispute of material fact exists as to prong two, the Court must necessarily find that Rawls-Dolin cannot maintain a claim for First Amendment retaliation.

For the second element, the balance of employer and employee interests, the Court may consider numerous factors for this fact-specific inquiry. *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 317 (4th Cir. 2006). The Fourth Circuit has instructed courts to consider, among other things, whether the speech: (1) impaired discipline by superiors; (2) impaired harmony among co-workers; (3) had a detrimental impact on close working relationships; (4) impeded the performance of Rawls-Dolin's duties; (5) interfered with the operation of Riverside at large; (6) undermined Riverside's mission; (7) was communicated publicly or to co-workers in

private; (8) conflicted with Rawls-Dolin's responsibilities as an employee; or, (9) invoked the authority and public accountability which Rawls-Dolin's role entailed. *Id.* (citing *McVey*, 157 F.3d at 278). "Many of these factors overlap with the inquiry into whether [Rawls-Dolin's] expression regarded a matter of public concern." *Willis*, 90 F. Supp. 3d at 611.

Defendants sufficiently support that their interest in confidential investigations outweigh Rawls-Dolin's First Amendment speech. Defendants argue that Lieutenant Jones revoked Rawls-Dolin's security clearance because Rawls-Dolin broke confidentiality by speaking with Captain Wyche about the investigation, in violation of OPR Policy. (Am. Mem. Supp. Mot. Summ. J. 10.) Riverside submits the investigation form she signed just two weeks before she spoke to Captain Wyche.[13] (*Id.* ¶¶ 10, 11.) OPR Policy requires staff members to refrain from "discuss[ing] any information regarding the investigation, except at the discretion of the investigator or Superintendent." (Am. Mot. Summ. J. Ex. 4 "OPR Policy" § 2.5.4, ECF No. 69-4.) Further, OPR Policy provides that "[e]mployees who refuse to cooperate fully with an investigation, impede or interfere with an investigation are subject to disciplinary action up to and including dismissal." (*Id.* § 2.5.3.) Defendants argue that Rawls-Dolin violated such policy by speaking with Captain Wyche "about the investigation." (Am. Mem. Supp. Mot. Summ. J. 10.)

Defendants' interest in maintaining such policies outweighs Rawls-Dolin's First Amendment right to speak with other employees or staff members about the investigation. Defendants' interest in confidentiality and maintaining efficient investigations is a "strong state

---

[13] After speaking to Captain Wyche, Lieutenant Jones directed Captain Wyche to send Rawls-Doline to her office. (Answer Ex. 2 "Affidavit of Lieutenant Charlene Jones" ¶ 11, ECF No. 51-2.) Lieutenant Jones asked Rawls-Dolin "if she remembered signing the Investigation Warning Form . . . on March 28, 2019." (*Id.*) Rawls-Dolin "denied signing [the] form." (*Id.*; see also Craig Aff. ¶ 2.) Lieutenant Jones presented the signed Investigation Form to superintendent Craig, who revoked Rawls-Dolin's security clearance. (Craig Aff. ¶ 2.)

17

interest." *See Rankin*, 483 U.S. at 388 ("Interference with work [or] personnel relationships . . . can detract from the public employer's function; avoiding such interference can be a strong state interest.") OPR Policy allows Riverside to "conduct fair and impartial investigation of complaint and/or allegations of misconduct." (OPR Policy 1.) Defendants provide Rawls-Dolin's signed Investigation Form that bound Rawls-Dolin to OPR Policy of keeping investigations confidential.[14] By informing Captain Wyche of the investigation, especially as Kindred's supervisor, Rawls-Dolin put Defendants' efforts of conducting effective and efficient investigations at risk. Notably, Captain Wyche avows that Rawls-Dolin's statements were the "first time [she had] heard of the OPR investigation." (Wyche Aff. 1.) Captain Wyche reported the incident to Lieutenant Jones, who "asked that [Captain Wyche] send [Rawls-Dolin] to her office." (*Id.*) That same day, Lieutenant Jones spoke with Rawls-Dolin, and upon consulting with Superintendent Craig, revoked Rawls-Dolin's security clearance. (*See* Craig Aff. 1.) Such facts lend to a similar conclusion to that of the Supreme Court of the United States in *Connick v. Myers*, wherein the Supreme Court reasoned:

> The limited First Amendment interest involved here does not require that [Defendant] tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships. Myers' discharge therefore did not offend the First Amendment.

461 U.S. at 154.

---

[14] Despite Rawls-Dolin's contention that such policy cannot apply to her as an independent contractor, Rawls-Dolin cannot contest the signed Investigation Form, wherein she consented to OPR Policy for confidential investigations. (ECF No. 51-5.) Additionally, OPR Policy states: "*Staff members* are not to discuss any information regarding the investigation." (OPR Policy § 2.5.4.) As such, whether Rawls-Dolin qualifies as an independent contractor or "common law employee," as she claims, it does not create a genuine dispute of material fact that she had an awareness of OPR Policy and obliged to it by signing the Investigation Form. (*See* Am. Compl. 7.)

18

As such, the facts show that even in a light most favorable to Rawls-Dolin, no genuine dispute of material fact exists as to whether Defendants' interest in confidentiality outweighed Rawls-Dolin's First Amendment right. Because the undisputed facts would not provide the basis for a jury to find in favor of Rawls-Dolin's First Amendment retaliation claim, the Court must grant the Motion for Summary Judgment.[15]

## IV. Conclusion

For the foregoing reasons, the Court will grant the Motion for Summary Judgment. (ECF No. 68.)

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 8/4/21
Richmond, Virginia

---

[15] Because the undisputed facts do not allow Rawls-Dolin's claim to proceed before this Court, the Court will deny the Motions for Subpoena.